## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the "United States"), Florida Pain Medicine Associates, Inc. (Florida Pain Medicine), Dr. Bart Gatz, Dr. Alexis Renta, and Dr. Albert Rodriguez (collectively, "Defendants"), and Rosa Gomez (Relator) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Florida Pain Medicine is a pain clinic located principally at 2828 South Seacrest Blvd., suite 210, Boynton Beach, Fl 33435; it is equally owned and operated by Drs. Gatz, Renta, and Rodriguez.

B. On August 27, 2013 the Relator filed a *qui tam* action in the United States District Court for the District of the Southern District of Florida captioned *United States ex rel. Gomez v. Florida Pain Medicine Associates, Inc., et al.*, Case No. 13-CV-80856, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Therein, the Relator alleges that Defendants submitted or caused to be submitted to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare") false claims arising from the following:

(1) performing medically unnecessary procedures, including but not limited to, nerve conduction studies and steroid injections,

(2) prescribing medically unnecessary durable medical equipment, including but not limited to, back braces,



EXHIBIT A

(3) billing for physician services that were not provided, and/or performed by non-physicians personnel not authorized to administer such procedures, and

(4) falsifying billing codes for non-Medicare eligible procedures, so that Defendants could obtain Medicare reimbursement for procedures not eligible for reimbursement.

C.  The United States contends that Defendants submitted or caused to be submitted claims for payment to Medicare.

D.  The United States contends that it has certain civil claims against Defendants arising from their submission of claims for payment to Medicare for nerve conduction studies that were not medically necessary during the period from January 2009 through December 2015. That conduct is referred to below as the "Covered Conduct."

E.  This Settlement Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

F.  Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Defendants shall pay to the United States ONE MILLION ONE HUNDRED THOUSAND DOLLARS ($1,100,000) (the "Settlement Amount") no later than 15 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of Florida.

2. Conditioned upon the United States receiving the Settlement Amount from Defendants and as soon as feasible after receipt, the United States shall pay TWO HUNDRED

2

AND FORTY-TWO THOUSAND DOLLARS ($242,000) to Relator by electronic funds transfer to the McCabe Rabin, P.A. Trust Account.

3. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and conditioned upon Defendants' full payment of the Settlement Amount, the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 6 below, and conditioned upon Defendants' full payment of the Settlement Amount, Relator, for herself and her heirs, successors, attorneys, agents, and assigns, releases Defendants from any civil monetary claim the relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733, with the exception of Relator's claim for attorney's fees and costs pursuant to 31 U.S.C. § 3730(d).

5. In consideration of the obligations of Defendants in this Agreement and the separate Corporate Integrity Agreement (CIA) entered into between OIG-HHS and Defendants, and conditioned upon Defendants' full payment of the Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against Defendants under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 6 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Defendants from Medicare, Medicaid, and

other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 6 below.

6. Notwithstanding the releases given in paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement; and

    f. Any liability of individuals.

7. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the payment described in Paragraph 2, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. Defendants fully and finally release the Relator from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the Relator, related to the Covered Conduct and Civil Action and the Relator's investigation and prosecution thereof.

11. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

12. Defendants agree to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

        (4) the negotiation and performance of this Agreement;

        (5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relator, including costs and attorneys fees; and

        (6) the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However, nothing in paragraph 12.a.(6)

6

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that are not allowable based on any other authority applicable to Defendants.

   b. <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

   c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any

of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

13.    Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15.    Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. Upon receipt of the payment described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Southern District of Florida. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

### THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
Franklin G. Monsour
Assistant United States Attorney
Southern District of Florida

DATED: _____ BY: _____
Robert K. Deconti
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

### DEFENDANTS

DATED: _____ BY: _____
Florida Pain Medicine Associates, Inc.

DATED: _____ BY: _____
Dr. Bart Gatz

DATED: _____ BY: _____
Dr. Alexis Renta

DATED: 4/5/16 BY: _____
Dr. Albert Rodriguez

DATED: _____ BY: _____
Anthony Vitale
Vitale Health Law
Counsel for Defendants

### ROSA GOMEZ - RELATOR

DATED: 4/5/16 BY: _____
Rosa Gomez

DATED: 4/15/16 BY: _____
Ryon McCabe
McCabe Rabin, P.A.
Counsel for Relator

11

## THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
Franklin G. Monsour
Assistant United States Attorney
Southern District of Florida

DATED: _____ BY: _____
Robert K. Deconti
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## DEFENDANTS

DATED: _____ BY: _____
Florida Pain Medicine Associates, Inc.

DATED: _____ BY: _____
Dr. Bart Gatz

DATED: _____ BY: _____
Dr. Alexis Renta

DATED: _____ BY: _____
Dr. Albert Rodriguez

DATED: 4/5/16 BY: _____
Anthony Vitale
Vitale Health Law
Counsel for Defendants

## ROSA GOMEZ - RELATOR

DATED: _____ BY: _____
Rosa Gomez

DATED: _____ BY: _____
Ryon McCabe
McCabe Rabin, P.A.
Counsel for Relator

11

THE UNITED STATES OF AMERICA

DATED: _____ BY: _____
Franklin G. Monsour
Assistant United States Attorney
Southern District of Florida

DATED: _____ BY: _____
Robert K. DeConti
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

**DEFENDANTS**

DATED: 4/16/16 BY: _____
Florida Pain Medicine Associates, Inc.

DATED: 4/16/16 BY: _____
Dr. Bart Gatz

DATED: 4/6/15 BY: _____
Dr. Alexis Renta

DATED: _____ BY: _____
Dr. Albert Rodriguez

DATED: _____ BY: _____
Anthony Vitale
Vitale Health Law
Counsel for Defendants

**ROSA GOMEZ - RELATOR**

DATED: 4/5/16 BY: _____
Rosa Gomez

DATED: 4/15/16 BY: _____
Ryon McCabe
McCabe Rabin, P.A.
Counsel for Relator

## THE UNITED STATES OF AMERICA

DATED: 4/6/16       BY: _____
                         Franklin G. Monsour
                         Assistant United States Attorney
                         Southern District of Florida

DATED: 4/12/16      BY: _____
                         Robert K. Deconti
                         Assistant Inspector General for Legal Affairs
                         Office of Counsel to the Inspector General
                         Office of Inspector General
                         United States Department of Health and Human Services

## DEFENDANTS

DATED: _____    BY: _____
                         Florida Pain Medicine Associates, Inc.

DATED: _____    BY: _____
                         Dr. Bart Gatz

DATED: _____    BY: _____
                         Dr. Alexis Renta

DATED: _____    BY: _____
                         Dr. Albert Rodriguez

DATED: _____    BY: _____
                         Anthony Vitale
                         Vitale Health Law
                         Counsel for Defendants

## ROSA GOMEZ - RELATOR

DATED: _____    BY: _____
                         Rosa Gomez

DATED: _____    BY: _____
                         Ryon McCabe
                         McCabe Rabin, P.A.
                         Counsel for Relator